Bissell, P. J.,
delivered the opinion of the court.
The contention in this replevin suit is over the title to a bunch of horses claimed by the respective parties. Murray, the appellant, sued the bank which had taken the horses off the range where they were running. His title, if any, was derived through a purchase from one C. C. Murray on the 16th of September, 1888. The bank got whatever title it had under a chattel mortgage given by one John- McBride on a lot of horses, which the bank insisted included the horses in controversy. A few days after the appellant’s purchase, McBride bought some horses from the same vendor, C. C. Murray, and the transfer was evidenced by a bill of sale. It appeared at the trial that the horses in dispute had two brands on them, — one what is known as the “ Hoe ” brand, made in the similitude of that agricultural instrument, and one called the “ Cross O Cross ” (XOX) brand. As to the Hoe brand, it was a legitimate device properly recorded, and furnished *360 prima facie evidence of ownership. The appellant, Murray, proved the record of this brand, its transfer to him, and that it was on the stock which he replevied; further, that he bought this particular stock from G. C. Murray at the date named, and put this brand on the horses. To overcome this testimony, the bank established the execution of the mortgage through which they claimed title, and likewise attempted to show that McBride was the owner of the mortgaged stock. He testified that he bought a lot of horses from C. C. Murray about the, 19th of September, 1888, which were branded with the Cross 0 Cross brand. In support of this statement, they offered in evidence the bill of sale, which substantially certified that the vendor, Murray, sold to McBride a certain herd of horses branded Cross 0 Cross on the left shoulder or thigh, formerly known as the “John Davis herd,” running in Burro cañón. The horses were not identified in any other manner than by the proof of the Cross O Cross,brand, and McBride’s statement that he had bought a lot of horses with that brand on from C. C. Murray, which he mortgaged to the bank to secure his debt. This evidence was objected .to, and the appellant likewise asked an instruction to the effect that a brand on an animal is prima facie evidence of an ownership in the person who shows title to the recorded brand. The instruction was refused. When the defendant rested, the plaintiff put a witness on the stand, who testified that he had bought the horses in dispute from one J. M. John. The plaintiff then attempted to show what disposition the witness had made of the horses at the time of his purchase, or shortly thereafter. The witness was interrogated on the question whether, at the date of the sale to McBride, he had not antecedently disposed of a portion of the herd which was the lot to which the plaintiff, Murray, asserted title. The defendant objected to the evidence, on the ground that it was not properly rebuttal, and should have been produced when the plaintiff made out his case. On the conclusion of the testimony, the jury rendered a verdict for the bank, and the plaintiff, Murray, appealed.
*361 The court committed error in its disposition of these two questions. Under sections 3171-3174, Gen. Stats., 1883, no evidence of ownership by brands is permissible in any action, unless the brands shall have been recorded. By this act a recorded brand furnishes prima facie evidence of ownership in the person who makes out a title to it. This clearly shows that the evidence which the bank offered of ownership in McBride was insufficient and incompetent in the state of the proof. The bill of sale did not attempt specifically to define, either by description, name or number, the stock sold. It is possible that the description the “John Davis herd,” if it had been coupled with other proof, might furnish a means of identification; but, as the record stands, there was no testimony produced tending to show that the horses in dispute ever formed a part of the John Davis herd, or that they were included in the bill of sale otherwise than by the evidence which McBride gave that he had bought a lot of'horses branded Cross 0 Cross, of which those in dispute were manifestly, according to the contention, a part. He was not entitled to show his ownership by proof of the brand. We do not insist that, if he otherwise identified the horses, he might not recover, nor that the witnesses who should give evidence concerning that identity might not, in their description, state all the brands on the animabas a means of identification. But,, where a party relies on the brand as the only evidence of his ownership as in this case, it is a condition precedent that the record be first or at some time fully established. The jury should have been instructed concerning this matter.
The appellant, Murray, was entitled to rest on the evidence of title furnished by the presence of the Hoe brand on the stock. This made out a prima facie case for him, and the jury should have been told that a recorded brand was such evidence of title. It was enough, as the proof stood, to establish his ownership. What this court might have done with the judgment if the only error suggested by the record was that relating to the testimony offered in rebuttal, it is not necessary to determine. The evidence was important. It *362 bore directly upon the transaction, tended to overthrow what had been produced by the defendant, and strongly supported the plaintiff’s main case. It does not seem very clear to us that he was bound originally to produce C. C. Murray to show what horses he sold to the appellant on the 16th'of September, 1888. It was in that particular somewhat cumulative, and entirely legitimate at that stage of the proceeding. The other branch of the inquiry, as to what horses C. O'. Murray held or owned of the herd which he had bought from John when he sold to McBride, was certainly not a legitimate matter of proof when the plaintiff was making out his case. After McBride went on the stand, and told what horses he bought of Murray, it must surely have been competent for the plaintiff then to prove what horses O. C. Murray owned at that date. The case is going back for another trial, and this trouble will be obviated.
For the errors committed by the trial court in these two particulars, the case will be reversed and remanded.

Reversed.